**BUNSOW DE MORY LLP**
M. Elizabeth Day (SBN 177125)
eday@bdiplaw.com
Marc Belloli (SBN 244290)
mbelloli@bdiplaw.com
Robin Curtis (SBN 271702)
rcurtis@bdiplaw.com
Aaron R. Hand (SBN 245755)
ahand@bdiplaw.com
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248

*Attorneys for Plaintiffs Adeia Media
Holdings Inc. and Adeia Technologies Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ADEIA MEDIA HOLDINGS INC. & ADEIA TECHNOLOGIES INC., <br><br> Plaintiffs, <br><br> v. <br><br> DIRECTV, LLC, <br><br> Defendant. | Case No. 2:26-cv-7222 <br><br> **PLAINTIFFS ADEIA MEDIA HOLDINGS INC. AND ADEIA TECHNOLOGIES INC.'S COMPLAINT FOR PATENT INFRINGEMENT** |

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. &
ADEIA TECHNOLOGIES INC.'S COMPLAINT

Adeia Media Holdings Inc. and Adeia Technologies Inc. (collectively, "Plaintiffs" or "Adeia Plaintiffs") bring this action for patent infringement against DIRECTV, LLC, for infringement of U.S. Patent Nos. 8,327,013 ("the '013 patent"); 8,219,927 ("the '927 patent"); 8,023,884 ("the '884 patent"); and 12,593,081 ("the '081 patent") (collectively, the "Asserted Patents"). The Adeia Plaintiffs, on personal knowledge as to their own acts, and upon information and belief as to all others based on investigation, allege as follows:

## THE PARTIES

### A. *Adeia*

1.      Plaintiff Adeia Media Holdings Inc. ("Adeia Media Holdings") is a Delaware limited liability company with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134. Adeia Media Holdings is a wholly owned subsidiary of Adeia Inc.

2.      Plaintiff Adeia Technologies Inc. ("Adeia Technologies") is a Delaware corporation with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134. Adeia Technologies is a wholly owned subsidiary of Adeia Media LLC.

3.      Adeia Media Holdings and Adeia Technologies are collectively referred to herein as the "Plaintiffs" or "Adeia Plaintiffs." Adeia Inc. along with its subsidiaries are referred to herein collectively as "Adeia."

4.      Adeia invents, develops, and licenses fundamental technology that shapes the way millions of people explore and experience entertainment and enhances billions of devices in an increasingly connected world.

5.      Adeia presently owns over 13,750 patents and patent applications worldwide. Adeia's media patent portfolio covers fundamental aspects of the entertainment experience across platforms, including how users discover and stream media content. The Asserted Patents are part of Adeia's media patent portfolio.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

Adeia's semiconductor patent portfolio covers crucial semiconductor manufacturing technology such as hybrid bonding, advanced processing nodes, and advanced packaging.

6.      Adeia's history of innovation stretches back over 30 years through its predecessor companies such as United Video, Gemstar, TiVo, Macrovision, Rovi, and MobiTV, to name but a few.

7.      Take, for instance, Adeia predecessor United Video. Founded in 1965, United Video was a visionary in broadcasting and entertainment. Its story begins in an era before interactive and digital programming guides existed, when viewers would have to look in a newspaper or paper magazine to find out the schedule for their TV stations. United Video offered one of the first, if not the first, on-screen electronic program guides in North America in 1981. This electronic program guide was not interactive, but instead automatically scrolled through program listings on a dedicated channel. United Video's electronic program guide technology was widely adopted by North American cable systems. United Video continued to innovate in the decades that followed, including through work on interactive program guide technology.

8.      Adeia predecessor Gemstar provides another example. Whether using a printed program guide or a non-interactive electronic program guide like the one pioneered by United Video to locate shows of interest, programming a VCR to record those shows presented a fresh challenge in the 1980s. The arcane steps required made it inordinately difficult for regular users to record their favorite TV programming. Gemstar set about to make the technology more consumer friendly. Gemstar's first innovation was VCR Plus, which assigned numeric codes to programs so that a single code would tell the VCR how to record the program (what channel, what time, how long, etc.). Gemstar followed that up with its Guide Plus Gold innovation, which permitted users—via remote control—to highlight a program in an interactive on-screen guide, see a detailed description, and program their VCRs to record it with one

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

button click. Gemstar's innovations were widely acclaimed. But Gemstar was not a hardware manufacturer able to mass produce VCRs. Rather, Gemstar licensed its technology to the leading VCR makers, who incorporated it into their products and made them widely available to consumers.[1]

9.    Another Adeia predecessor, Macrovision, designed, developed and marketed video security technologies and products that provide copy protection and video scrambling for motion pictures and other proprietary video material. Its business model also centered on licensing its technology, and in 1997, Macrovision technology was estimated to protect 1.5 billion cassettes, primarily Hollywood releases, from unauthorized copying.[2]

10.    Macrovision acquired Gemstar, broadening the range of technology it offered to its licensees. Macrovision eventually changed its name to Rovi. Rovi remained active in developing new technology, investing over $300 million in research and development from 2014 to 2017 alone.

11.    Rovi also continued to make strategic investments in entertainment-related technologies. For example, in 2011 it acquired Sonic Solutions.[3] Sonic Solutions was a market-leading computer-software company created by former Lucasfilm employees Robert Doris, Mary Sauer, and Andy Moorer, who developed "SoundDroid," a digital audio editing system, as part of the Droid Works project at the Lucasfilm Computer Division. Its technologies were used to restore tens of thousands of recordings, including movie and TV soundtracks. Sonic Solutions even

[1] *See, e.g.*, Walter Hamiton & Karen Kaplan, *Can Gemstar Keep Rising?*, LA TIMES, (Aug. 9, 1998), https://www.latimes.com/archives/la-xpm-1998-aug-09-fi-11494-story.html.

[2] *See, e.g.*, Macrovision Corp., SEC Rule 424(b)(4) Filing at 3 (Mar. 14, 1997), https://www.sec.gov/Archives/edgar/data/1027443/000091205797008691/0000912057-97-008691.txt.

[3] *See, e.g.*, Don Reisinger, *Rovi to buy Sonic for $720 million*, CNET (Dec. 23, 2010), https://web.archive.org/web/20140305193416/http://news.cnet.com/8301-13506_3-20026481-17.html.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

received an Emmy® for outstanding technical achievement for its work in that space.[4] As another example, Rovi acquired patents from Microsoft, including one of the Asserted Patents.

12. Similarly, Adeia predecessor TiVo Inc. transformed the television watching experience with its digital video recorders (DVR), ultimately dethroning the VCR as a primary mechanism for household recording of broadcast content. Its first model, the TiVo HDR110, launched commercially in March 1999. TiVo received wide acclaim and recognition for its pioneering work. For example, then-FCC Chairman Michael Powell praised TiVo's innovative technology during a public appearance at the 2003 Consumer Electronics Show, calling it "God's machine." "I can't wait to walk in the house each day to see what it's recorded for me," he continued.[5] In 2007, PC World Magazine awarded the TiVo HDR110 the number 3 spot on its list of the 50 Best Tech Products of All Time.[6] Time Magazine listed the TiVo DVR as one of the All-TIME 100 Gadgets in 2010, alongside other devices such as Amazon Kindle and Apple iPhone.[7] The original TiVo DVR was in the United States Patent and Trademark Office National Inventors Hall of Fame. TiVo even won three Emmys®—for "Pioneering the Development" of the DVR, "Outstanding

---

[4] *See, e.g.*, *Sonic Solutions NoNOISE Honored with Emmy Award; Recognized for Groundbreaking Digital Sound Restoration Product*, SONIC SOLUTIONS (Oct. 2, 1996), https://web.archive.org/web/20160305025036/http://www.thefreelibrary.com/Sonic+Solutions+NoNOISE+Honored+with+Emmy+Award;+Recognized+for+...-a018722139.

[5] *See, e.g.*, Benny Evangelista, *PLENTY OF COMPANY / Everybody's talking about TiVo, but the digital video recorder pioneer is just one of many*, SFGATE (Feb. 24, 2003), https://www.sfgate.com/business/article/PLENTY-OF-COMPANY-Everybody-s-talking-about-2632474.php.

[6] *See, e.g.*, Christopher Null, *PC World: The 50 best tech products of all time*, MACWORLD (Apr. 1, 2007), https://www.macworld.com/article/185028/50besttech.html.

[7] *See, e.g.*, Peter Ha, *All-TIME 100 Gadgets*, TIME (Oct. 25, 2010), https://content.time.com/time/specials/packages/article/0,28804,2023689_2023681_2023596,00.html.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA TECHNOLOGIES INC.'S COMPLAINT

Innovation" in "Advanced Media Technology," and "Outstanding Achievement in Interactive Television."[8]

13.    In addition to selling its own hardware that implemented its technical innovations, such as the TiVo HDR110, TiVo also licensed its technology to others in the industry. For example, DISH Network and EchoStar licensed certain important TiVo patents for use in their own DVRs. Additionally, DirectTV offered its customers set-top boxes for its satellite service that incorporated TiVo's DVR technology, which were sometimes referred to as DirecTiVos. Furthermore, TiVo made strategic acquisitions of foundational technology.

14.    In 2016, Rovi acquired TiVo. The combined company continued to be active in its internal research and development efforts and continued to seek out opportunities to acquire other innovative technology companies.

15.    Like its predecessors, Adeia remains committed to technological innovation. Adeia spends tens of millions of dollars per year on research and development. For example, in 2025 alone, Adeia spent over $67 million on research and development.[9] These efforts have contributed to the continued growth of Adeia's patent portfolio. In the past several years alone, Adeia's inventors have participated in over thirty joint research partnerships with R&D organizations and academic institutions across the globe. In the semiconductor space, Adeia's engineers are supported by over 3,000 square feet of clean room space and wafer fabrication capabilities.

16.    Beyond Adeia's internal R&D efforts, its intellectual property portfolio has also grown through strategic acquisitions of technology from other leading-edge companies. For example, in 2024, Adeia acquired rights to patented inventions from

---

[8]    *See, e.g., Emmy award-winning TiVo service*, TIVO, https://www.tivo.com/assets/popups/popup_emmyaward.html.

[9] Adeia Inc., Annual Report (Form 10-K) at 33 (Feb. 26, 2026).

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

a global leader in content streaming, Brightcove Inc., including one of the Asserted Patents. Brightcove itself is the recipient of two different Technology & Engineering Emmy® Awards.[10] Some of the patented technology originated from Brightcove's predecessor, Unicorn Media. Unicorn Media pioneered an innovative, cloud-based streaming service called Once. The Once service was designed to make it possible for digital media companies to reliably deliver live or on-demand video to end users across a wide variety of device types through dynamically customized streaming.[11] The Once service delivered patented technology that allowed publishers to ingest content once and receive a single URL that could be requested by any IP-enabled video playback device. On the back-end, the service would dynamically tailor the delivery of the streaming data to account for the needs of the particular device. In addition to tailoring the streams to the device, it could also tailor the content to the user by, for example, inserting personalized ads into the stream to create a seamless, TV-like experience.[12] Unicorn Media's groundbreaking technology garnered industry praise, such as earning top honors in the Digital Video Technology Platform category at the Cynopsis Digital Model D Awards in November 2013.[13]

17.    As another example, Adeia acquired patented inventions from an innovator in cloud-based video delivery, DLVR, Inc., including one of the Asserted Patents. DLVR is a cloud-based video delivery optimization company founded in

---

[10] *See, e.g.*, *About Brightcove*, BRIGHTCOVE, https://www.brightcove.com/en/company/about/.

[11] *See, e.g.*, *Brightcove Completes Unicorn Media Acquisition*, BRIGHTCOVE (Jan. 31, 2014), https://www.brightcove.com/en/company/press/brightcove-completes-unicorn-media-acquisition/.

[12] *See, e.g.*, *Unicorn Media Announces Support for Adobe HTTP Dynamic Streaming*, UNICORN MEDIA (May 9, 2011), https://www.prnewswire.com/news-releases/unicorn-media-announces-support-for-adobe-http-dynamic-streaming-121490384.html.

[13] *See, e.g.*, Unicorn Media Earns Cynopsis Digital Model D Award For Groundbreaking Unicorn Once™ Solution, UNICORN MEDIA (Nov. 20, 2013), https://www.prnewswire.com/news-releases/unicorn-media-earns-cynopsis-digital-model-d-award-for-groundbreaking-unicorn-once-solution-232651281.html.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

2014 and headquartered in Phoenix, Arizona. DLVR developed advanced technology solutions aimed at improving internet video viewing experiences for every user, on every device. DLVR's technology includes an industry-first approach that optimized content delivery by, for example, measuring Content Delivery Network (CDN) performance across a publisher's actual streams and optimized user video requests stream-by-stream, taking into consideration all the factors that influence the Quality of Experience (QoE) of internet video for end users. DLVR's innovative approach attracted significant industry partnerships, including a partnership with Comcast to provide video delivery optimization services to Comcast CDN customers, with Crunchyroll serving as one of the first joint customers.

18.    Through its licensing program, Adeia places the many valuable innovations represented in its patent portfolios in the hands of consumers via the products and services offered by its licensing partners.

19.    The identities of the companies who have chosen to become and remain Adeia licensees stand as a testament to the value of the technology Adeia offers. For example, top U.S. pay-TV providers, streaming giants and hardware manufacturers such as AT&T, Verizon, Cox Communications, Comcast, Spectrum, Frontier, Google (YouTube, YouTube TV), Paramount (Paramount+, Pluto TV), Disney (Disney+, ESPN, Hulu), Sony, TCL, Roku, and Samsung have licensed Adeia's media patent portfolio. DIRECTV was previously owned by AT&T. Consequently, DIRECTV was licensed to Adeia's media patent portfolio through the AT&T license, which expired on December 31, 2025.

## B. *Defendant*

20.    Defendant DIRECTV, LLC is a California limited liability company with a principal place of business at 2260 East Imperial Highway, El Segundo, California 90245. DIRECTV, LLC has designated the C T Corporation System, 330 N. Brand Blvd., Glendale, CA, as its agent for service of process.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

## JURISDICTION AND VENUE

21.    This action includes claims of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

22.    This Court has general personal jurisdiction over Defendant because each of its affiliations with the State of California are so systematic and continuous to render the Defendant at home in California. In particular, the Defendant's principal place of business is located in California at 2260 East Imperial Highway, El Segundo, California 90245.

23.    This Court also has specific personal jurisdiction over Defendant because it has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, either directly or through subsidiaries or intermediaries, has conducted business in this District by marketing, selling, offering for sale, and operating its products and services, including each of the accused streaming services that practice the patents and claims asserted in this action. In addition, Defendant distributes streaming media through content distribution networks that use servers in this District, which are controlled by Defendant and configured to infringe the Asserted Patents.

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because the Defendant resides and/or has committed acts of infringement and has a regular and established place of business in the District.

## FACTUAL BACKGROUND

25.    The Adeia Plaintiffs present their claims and allegations herein in conjunction and/or in the alternative. To the extent that certain claims or allegations may be inconsistent with one another, such allegations should be understood to be made in the alternative.

9

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

### A. *Defendant's Infringing Products and Services*

26.　　DIRECTV delivers audio and video content to its customers through two mediums—internet and satellite.[14] DIRECTV provides customers with numerous options for subscription packages for its service ("the DIRECTV Service"). For example, DIRECTV advertises that its Signature streaming plans deliver a full, traditional-style channel lineup—like cable or YouTubeTV—without long-term commitments or confusing interfaces, while its more customizable plans allow flexibility to build a TV plan that fits a customer's interests, giving them exactly the channels they want, without all the rest.[15]  The DIRECTV Service requires customers to use DIRECTV software and/or hardware.

27.　　When delivered with the DIRECTV Service over the internet, content is distributed over DIRECTV's cloud infrastructure and content delivery networks to customers' internet-connected, compatible devices. Compatible devices include DIRECTV's own hardware, e.g., Gemini, Gemini Air, etc., and other third-party devices and browsers.[16] The DIRECTV Service may be accessed by the DIRECTV App to provide content to DIRECTV's customers. When accessed using a browser, the DIRECTV Service may be provided via a web app.

28.　　When delivered with the DIRECTV Service over satellite, content is transmitted from broadcasting facilities to orbiting satellites, which beam the content

---

[14] *See Satellite TV vs. TV Over Internet: What's the Difference*?, DIRECTV INSIDER, https://www.directv.com/insider/satellite-tv-vs-over-internet-tv/ (last visited May 19, 2026).

[15] *TV Plans*, DIRECTV, https://www.directv.com/tv-plans/ (last visited June 12, 2026).

[16] Third party devices and browsers include Amazon's Fire TV and Tablet; Android and Google's TV devices, Chromecasts, Chrome browser, and phones and tablets; Apple's TV devices, Safari browser, iPhones, iPads, and iPod Touches, and Vision Pros; LG's Smart TVs; Meta Quest VR Headsets; Microsoft Edge browser; Peloton's Bike, Bike+, Row, Tread, and Tread+; Roku devices; Samsung TVs; VIZIO's VIZION Smart TVs. *Streaming Devices Compatible with DIRECTV*, DIRECTV, https://www.directv.com/support/article/000093525 (last accessed May 11, 2026).

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

back down to a satellite dish installed at the customer's premises.[17] From the satellite dish, the signal travels through a cable to a DIRECTV satellite receiver, which decodes the signal and sends the picture to the customer's television. Compatible DIRECTV satellite receivers include the Genie HD DVR, Genie 2, Genie Mini, Wireless Genie Mini, and Gemini client devices.[18]

29.    When using a DIRECTV satellite receiver, connecting the receiver to the internet is not required, but DIRECTV highly recommends doing so for the best experience, including access to SignalSaver and on-demand content.[19] With SignalSaver, customers can begin watching on their satellite and choose to continue live viewing tapping into a reliable internet connection if their satellite reception is interrupted. DIRECTV explains, "For example, let's say it's the 4th quarter of the College Football Playoff championship game and in the last minute a storm moves in threatening your satellite signal. With SignalSaver, a customer with an internet-connected set-top box can switch over to streaming to pick up right where beam left off."[20] As another example, an internet-connected satellite receiver allows customers to use DIRECTV's 72 Hour Rewind feature.  The 72 Hour Rewind feature lets customers immediately watch shows that aired in the past 72 hours on-demand, even if they forgot to record them with their DVR.[21]

---

[17] *What Is Satellite TV & How Does It Work?*, DIRECTV INSIDER, https://www.directv.com/insider/what-is-satellite-tv/ (last accessed June 1, 2026).

[18] *Learn about Genie HD DVR and devices*, DIRECTV, https://www.directv.com/support/article/000106788 (last accessed June 1, 2026).

[19] *Id.*

[20] *With DIRECTV's SignalSaver Feature You'll Never Miss a Moment*, DIRECTV INSIDER, https://www.directv.com/insider/news/never-miss-a-moment-with-directv-signalsaver/ (last accessed June 1, 2026).

[21] *See Use DIRECTV 72 Hour Rewind to Watch Previously Aired Programming*, DIRECTV, https://www.directv.com/support/satellite/article/000081220 (last visited May 19, 2026).

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA TECHNOLOGIES INC.'S COMPLAINT

30. Customers who use the DIRECTV Service over satellite also have access to use the DIRECTV Service over the internet.[22] For example, satellite customers may also stream DIRECTV content using their computers, tablets, phones and smart TVs.

31. For more than two decades, DIRECTV, through itself or through its corporate affiliates, was a licensee of Adeia, its corporate affiliates, or its corporate predecessors.

32. DIRECTV's most recent license to Adeia's media patent portfolio, through AT&T's license, expired on December 31, 2025.

## B. *Defendant's Actions to Induce Infringement*

33. DIRECTV has notice of the Asserted Patents and the Adeia Plaintiffs' infringement allegations at least as of the filing of this Complaint.

34. Moreover, DIRECTV previously licensed Adeia's media portfolio, but that license expired December 31, 2025. DIRECTV knew that Adeia believed DIRECTV needed to renew its license to the media portfolio.

35. According to DIRECTV, "[A]s the end of the AT&T Agreement approached, Adeia demanded that DIRECTV once again enter a license agreement for the Adeia portfolio and pay very substantial royalties for those patents. Adeia has consistently informed DIRECTV that it would need a license to the Adeia patent portfolio after the AT&T Agreement expires."

36. DIRECTV has stated that "DIRECTV has reason to expect that if it does not agree to a license agreement with Adeia and continues selling its DIRECTV Products and Services, that it will be at risk of accruing possible damages for patent infringement with respect to Adeia's patents . . . ."

---

[22] *See Streaming devices compatible with DIRECTV*, DIRECTV, https://www.directv.com/support/article/0000799946 (last visited June 1, 2026) (describing DIRECTV device and DIRECTV App streaming limits).

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

37.   DIRECTV induces end-user customers' infringement by offering for sale subscriptions to, selling subscriptions to, encouraging the download or access of, instructing on the use of, and encouraging the use of the DIRECTV Service.

38.   Further evidence of Defendant's actions to induce infringement is discussed below in each Count.

39.   DIRECTV took these actions (including those discussed below) intending to cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patents and the DIRECTV Service's infringement thereof.

## COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 8,327,013

40.   The Adeia Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein.

41.   The '013 patent, entitled "Dynamic index file creation for media streaming," issued on December 4, 2012, and names Albert John McGowan and Richard L. Carls as inventors. The '013 patent is attached as Exhibit A.

42.   Adeia Media Holdings Inc. owns all rights, title, and interest in the '013 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

43.   The '013 patent is valid and enforceable and directed to patentable subject matter.

44.   The notice provisions of 35 U.S.C. § 287 do not apply in this case for the '013 patent, and therefore Adeia has satisfied its obligations under 35 U.S.C. § 287 with respect to the '013 patent.

45.   The '013 patent is directed to novel and unconventional systems and methods for improving the efficiency and flexibility of media streaming systems through specific request-driven generation of index files, allowing for dynamic insertion of media other than the underlying program, such as advertisements. Ex. A at Abstract; 1:49–2:29, 4:43–58, Fig. 6; *see, e.g., id.* at cls. 1, 8, 15. The claimed

13

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

systems and methods can reduce preprocessing, reduce storage, and enable streaming to be tailored to a particular requesting device, including tailored "insertion of advertisements at any point during playback of the media file." *Id.* at 1:53–57.

46.    Streaming generally involves "chunking" the media file being streamed—dividing it up into smaller segments for delivery to user devices. These individual chunks may each be a few seconds long (e.g., 3 to 10 seconds, depending on a variety of factors). Often, multiple versions of each chunk are made available at different quality levels (e.g., different bitrates). One or more index files or manifests are provided to the user device to provide it information about how to stream the content, such as information about where to locate the available chunks.

47.    A traditional approach to preprocessing media for streaming involves chunking and storing media assets, then creating and storing corresponding static index files or manifests. The claimed inventions, however, improve on streaming technology by enabling the server to dynamically generate a manifest for a particular device at the time it is requested. Consequently, different devices can receive different manifests for the same requested content. For example, different or personalized advertisements could be selected for inclusion on two different devices, even when viewing the same media content. Dynamic manifest generation thus allows integration of advertisements or other supplemental content in a more customizable and tailored way.

48.    Before the invention of the '013 patent, streaming workflows typically required extensive preprocessing—multiple encodes across reference bitrates, pre-chunking into segments, and static indexing—which consumed storage and deprived providers of the flexibility to insert additional media seamlessly during playback. *Id.* at 1:21–43. In particular, "a significant amount of preprocessing is required to prepare media for streaming," and "[t]his preprocessing leaves little flexibility for inserting an advertisement during streaming and can require a large amount of storage space to

14
PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

store the preprocessed chunks of media." *Id.* at 1:34–44. Static approaches, including Hypertext Transfer Protocol (HTTP) streaming, "required chunking and storing media assets, and generating corresponding index files," making it difficult to make dynamic decisions about ad insertion, segment length, or session reporting, and constrained the ability to tailor a stream to the requesting device and current conditions. *Id.* at 4:14–28.

49.    To overcome these technical shortcomings, the '013 patent claims systems and methods for dynamically generating index files that respond to client requests during playback by determining segments for streaming, deciding whether to include media "other than the media file" in the segments, determining starting and ending points, and then generating and providing a corresponding index file "during playback" to control streaming of the program. *Id.* at 1:49–57, 4:43–58; cls. 1, 8, 15. The claimed methods include a specific sequence of determinations that are structurally constrained by the request-response architecture of live streaming. Each determination occurs in response to a live client request during active playback. Determinations such as which segment should be available to stream, whether to incorporate supplemental media, and where that segment begins and ends must be made before a usable index file can be constructed, and the index file produced by those determinations is itself what governs what the downstream streaming pipeline does next. That structural constraint stands in contrast to traditional methods where static index files are utilized, which are created before any client request is received and therefore cannot incorporate session-specific information into determinations regarding the segment and supplemental media at all. This allows the system to perform functionality that was previously unattainable—inserting targeted advertisements or other supplemental content at any point in the stream, all of which can be determined during playback. In some instances, dynamic manifest generation may also enable dynamic chunking of content. *See id.* at 1:49–57, 10:20–31, 12:64–

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

13:3, 13:49–57. For example, the next chunk of media may not be cached at a location specified in a manifest, in which case the chunk may be dynamically created by pulling all or part of the media file of interest from a media file origin, chunking it, and making it available for download. The chunk also may be cached, thereby eliminating the need to create the chunk again if it is requested at some later time.

50.    These technical advancements are reflected in the claims, which recite, for example, receiving a request for a first index file; determining a first segment of a media file composed of one of a plurality of separately addressable segments; deciding whether to include media other than the media file in that segment; determining starting and ending points; generating and providing the index file; and then, during playback, repeating the process for a second requested index file. *See, e.g., id.* at cl. 8. This specific sequence is triggered by and responsive to a live client request and completed before the index file can be constructed, and produces a session-specific control document whose contents are determined by the particular request received and the particular session in progress. The ordered combination— dynamic, per-request index-file generation and segment-boundary control during playback—constitutes a specific technical solution to the rigidity and overhead of preprocessed streaming. And the ordered combination of the claims was not well- understood, routine, or conventional.

51.    In fact, the advance represented by the '013 patent was praised by the industry when it was introduced commercially. The '013 patent's patented technology was recognized for its ability to tailor content delivery and ad-insertion on the fly, server-side, in real-time rather than hours earlier. The technology was specifically acknowledged for rendering the distribution of content to any IP-enabled device less time consuming and less expensive, enabling content owners to cut costs and maximize profitability. That industry recognition confirms that the ordered

16
PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

combination was not well-understood, routine, or conventional at the time of the invention.[23]

52.　The claims recite specific, technical solutions to identified problems with conventional approaches. The detailed embodiments and figures in the specification demonstrate that the inventors possessed the claimed subject matter. The specification enables a person of ordinary skill in the art to implement the invention without undue experimentation.

53.　DIRECTV, LLC infringes one or more claims of the '013 patent by making, using, selling and/or offering to sell the DIRECTV Service in this District and elsewhere in the United States, and/or importing the DIRECTV Service into this District and elsewhere in the United States.

54.　Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality. Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the services.

55.　Claim 8 of the '013 patent recites: "A method for generating index files for streaming a media file via a network, the method comprising." To the extent that this preamble is limiting, the DIRECTV Service performs this element.

56.　The DIRECTV Service is a media streaming service that delivers content over the Internet, including by generating index files (e.g., manifest files) for a media file (e.g., one or more existing segments of advertisements and/or video content of a TV show).

---

[23] *Unicorn Media Enables Video Monetization For Screen Media's Popcornflix*, UNICORN MEDIA (Apr. 25, 2012), https://www.prnewswire.com/news-releases/unicorn-media-enables-video-monetization-for-screen-medias-popcornflix-148861135.html; *Unicorn Media Powers Ad Delivery to Mobile Devices for TidalTV*, UNICORN MEDIA (Nov. 29, 2011), https://www.prnewswire.com/news-releases/unicorn-media-powers-ad-delivery-to-mobile-devices-for-tidaltv-134666098.html.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA TECHNOLOGIES INC.'S COMPLAINT

57. Claim 8 of the '013 patent further recites: "receiving, with the network, a request for a first index file." The DIRECTV Service performs this element.

58. The DIRECTV Service receives, with the network (e.g., the Internet), a request for a first index file (e.g., a first manifest file).

59. Claim 8 of the '013 patent further recites: "determining a first segment of media for streaming, the first segment of media comprising one of a plurality of separately-addressable segments of the media file, wherein." The DIRECTV Service performs this element.

60. The DIRECTV Service determines a first segment of media for streaming. The media comprises separately-addressable segments (e.g., a URL for each segment), including the first segment.

61. Claim 8 of the '013 patent further recites: "the determination includes determining whether to include media, other than the media file, in the first segment of media for streaming." The DIRECTV Service performs this element.

62. The DIRECTV Service determines whether to include media (e.g., an advertisement), other than the media file (e.g., video content of a TV show), in the first segment of media for streaming.

63. Claim 8 of the '013 patent further recites: "the determination further includes determining a starting point and an ending point of the first segment of media for streaming." The DIRECTV Service performs this element.

64. The DIRECTV Service creates a manifest that presents the segments sequentially and provides information about the duration of each segment.

65. Claim 8 of the '013 patent further recites: "generating the requested first index file based, at least in part, on the determination of the first segment of media for streaming." The DIRECTV Service performs this element.

66. The DIRECTV Service generates the requested first index file during playback (e.g., the first manifest file) based, at least in part, on the determination of

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

the first segment of media for streaming. Information about the first segment is included in the generated manifest.

67.   Claim 8 of the '013 patent further recites: "providing, with the network, the requested first index file." The DIRECTV Service performs this element.

68.   The DIRECTV Service provides, with the network (e.g., the Internet), the requested first index file (e.g., first manifest file).

69.   Claim 8 of the '013 patent further recites: "receiving, with the network, a request for a second index file for use in streaming the media file." The DIRECTV Service performs this element.

70.   The DIRECTV Service receives, with the network (e.g., the Internet), a request for a second index file as playback continues (e.g., a second manifest file) for use in streaming the media file (e.g., video content of a TV show).

71.   Claim 8 of the '013 patent further recites: "determining a second segment of media for streaming, the second segment of media comprising one of the plurality of separately-addressable segments of the media file wherein." The DIRECTV Service performs this element.

72.   The DIRECTV Service determines a second segment of media for streaming. The media comprises separately-addressable segments (e.g., a URL for each segment), including the second segment.

73.   Claim 8 of the '013 patent further recites: "the determination includes determining whether to include media, other than the media file, in the second segment of media for streaming." The DIRECTV Service performs this element.

74.   The DIRECTV Service determines whether to include media (e.g., an advertisement), other than the media file (e.g., video content of a TV show), in the second segment of media for streaming.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

75.    Claim 8 of the '013 patent further recites: "the determination further includes determining a starting point and an ending point of the second segment of media for streaming." The DIRECTV Service performs this element.

76.    The DIRECTV Service creates a manifest that presents the segments sequentially and provides information about the duration of each segment.

77.    Claim 8 of the '013 patent further recites: "generating the requested second index file based, at least in part, on the determination of the second segment of media for streaming; and." The DIRECTV Service performs this element.

78.    The DIRECTV Service generates the requested second index file during playback (e.g., the second manifest file) based, at least in part, on the determination of the second segment of media for streaming. Information about the second segment is included in the generated manifest.

79.    Claim 8 of the '013 patent further recites: "providing, with the network, the requested second index file." The DIRECTV Service performs this element.

80.    The DIRECTV Service provides, with the network (e.g., the Internet), the requested second index file (e.g., second manifest file).

81.    Claim 8 of the '013 patent further recites: "wherein receiving the requests for the first and second index files and providing the requested first and second index files occur during playback of the media file by a device communicatively linked to the network." The DIRECTV Service performs this element.

82.    The DIRECTV Service receives the requests for the first and second index files (e.g., the first and second manifest files) and provides the requested first and second index files (e.g., the first and second manifest files) during playback of the media file by a device (e.g., a Gemini device) communicatively linked (e.g., through cellular or Wi-Fi) to the network (e.g., the Internet).

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

83.    The DIRECTV Service practices the claimed steps to dynamically insert advertisements. For example, the DIRECTV Service "dynamically inserts ads in-view within premium cable and digital-first networks."[24] To that end, the DIRECTV Service "[d]eliver[s] relevant ads to deterministically matched households across linear and streaming."[25] Furthermore, the DIRECTV Service provides advertisers the ability to dynamically "cap exposure where it's saturated and redistribute impressions to light TV viewers."[26]



https://www.linkedin.com/posts/directvadvertising_putting-the-viewer-front-and-center-of-dynamic-activity-7287522800146227201-a4tu[27]

---

[24] DIRECTV ADVERTISING, https://www.directvadvertising.com/solutions/contextual-targeting (last accessed June 2, 2026).
[25] DIRECTV ADVERTISING, https://www.directvadvertising.com/solutions/addressable (last accessed June 2, 2026).
[26] *Id.*
[27] *See also* Surendiran Dhayala Rajan, *Putting the Viewer Front and Center of Dynamic Ad Insertion*, (Jan. 15, 2025) (last accessed May 6, 2026)

(continued...)

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

84.    As described above, Defendant makes, uses, sells, and offers to sell the DIRECTV Service.

85.    Defendant also tests the DIRECTV Service for development purposes and to ensure quality of service.

86.    In addition or in the alternative, Defendant directs or controls its third-party cloud service and CDN providers' performance of those steps and/or has the power, right, and ability to stop the performance of those steps but declines to do so, and instead profits from their performance. For example, DIRECTV has contracts with its third-party cloud service and CDN providers. Thus, the performance of the claimed steps is attributable to Defendant.

87.    Accordingly, Defendant directly infringes, literally and/or under the doctrine of equivalents, the '013 patent under 35 U.S.C. § 271(a).

88.    In addition, Defendant has indirectly infringed the '013 patent under 35 U.S.C. § 271(b).

89.    Defendant has induced infringement by others, such as its subsidiaries and end-user customers.

90.    Defendant's advertising, sales, design, development, and/or technical materials related to operation of the DIRECTV Service contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause its subsidiaries and customers to directly infringe at least one claim of the '013 patent, either literally or under the doctrine of equivalents.

91.    Additionally, Defendant has induced infringement by the DIRECTV Service's end-user customers, for example, by implementing the infringing features in the DIRECTV Service, encouraging its users to use that functionality within the

https://www.mediavillage.com/article/putting-the-viewer-front-and-center-of-dynamic-ad-insertion/.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

United States, requiring its users to use the DIRECTV app, website, or equipment in order to obtain the DIRECTV Service, and/or instructing, dictating, or training its customers to use the infringing features.

92. In addition, Defendant sells, offers to sell, advertises, invites, entices, leads on, influences, encourages, prevails on, moves by persuasion, and/or causes customers to subscribe to the DIRECTV Service.

93. For example, Defendant instructs users on what the DIRECTV App is, what it does, and how to access and start using it. *See* https://www.directv.com/insider/directv-app/; https://www.directv.com/technology/app/; https://www.directv.com/support/article/000084350; https://www.directv.com/support/article/000093607. Defendant promotes the use of the DIRECTV Service's internet streaming functionality and promotes the "[f]ast & easy self-install." https://www.directv.com/how-to-watch/. Through these instructions, end users can put the infringing methodology into practice by using the DIRECTV Service to make requests for manifest files, which are received by the DIRECTV Service.

94. Defendant also actively promotes the benefits of the advertising features of the DIRECTV Service, noting Defendant is "now bringing its TV Video expertise beyond the traditional household to serve premium ad experiences to audiences on the go." https://www.directv.com/insider/news/advertising-directv-remote/. Defendant has further stated that "[a]ddressable TV advertising is defined as the use of targeted ads dynamically distributed to the household or user, based on identifiers matched against first, second- or third-party data. This then allows marketers to find smaller cohorts of consumers on the big screen, regardless if it is linear or Connected TV, and serve advertising tailored to them."

23

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

https://www.directv.com/insider/news/dish-media-and-directv-advertising-collaborate-to-simplify-addressable-tv-for-programmers/.

95. Defendant took the above actions intending to cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patent and the DIRECTV Service's infringement thereof.

96. Accordingly, Defendant has indirectly infringed the '013 patent under 35 U.S.C. § 271(b).

97. Despite its awareness of infringement of the '013 patent, Defendant continues to infringe.

98. Defendant's infringement of the '013 patent is willful.

99. Defendant's acts of infringement have caused damage to the Adeia Plaintiffs. The Adeia Plaintiffs are entitled to recover from Defendant the damages sustained by the Adeia Plaintiffs as a result of its wrongful acts in an amount subject to proof at trial.

### COUNT 2: INFRINGEMENT OF U.S. PATENT NO. 8,219,927

100. The Adeia Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein.

101. The '927 patent, entitled "Revealing of truncated content on scrollable grid," issued on July 10, 2012, and names Kang Su Gatlin, Elyssa Cox, Rebecca Penick, Erika Carlson, and Anthony Young as inventors. The '927 patent is attached as Exhibit B.

102. Adeia Technologies Inc. owns all rights, title, and interest in the '927 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

103. The '927 patent is valid and enforceable and directed to patentable subject matter.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

104. The notice provisions of 35 U.S.C. § 287 do not apply in this case for the '927 patent, and therefore Adeia has satisfied its obligations under 35 U.S.C. § 287 with respect to the '927 patent.

105. The '927 patent is directed to novel and unconventional improvements to the efficiency of the user interface of computing devices. It addresses a specific, technological improvement to the challenges that arise when presenting non-uniform grids of content within a limited display space, such as on a mobile device with a small screen. *See* Ex. B at 5:18–19 (discussing "personal digital assistant (PDA)" and "computer-enabled wireless telephone").

106. The '927 patent provides an improved user interface to present a non-uniform grid of content in limited screen space on the interface of a computing device. *See id.* at 1:22–23; 2:1–11. The claims of the '927 patent provide specific improvements in the functioning of the device's display system, allowing smoother and more efficient rendering of scrollable grids by eliminating abrupt refreshes and discrete jumps within a non-uniform grid.

107. Information on a computer screen may be displayed using a grid of cells, organized into rows and columns. *Id.* at 1:6–8. While the cells may be uniform, *id.* at 1:11–13, many practical interfaces—including programming guides, schedules, and merged-cell spreadsheets—use non-uniform grids with cells of differing sizes and offsets. *Id.* at 1:14–16; 2:25–52. Often, the content assigned to a cell is too large for the size of the cell. This content may be truncated to fit in the cell. *Id.* at 1:16–18; *see also id.* at Fig. 2. This is most apparent in computer systems with limited screen size, including mobile devices using non-uniform grids.

108. Conventional approaches would simply "refresh content" shown in an expanded cell. *Id.* at 3:45–50. This led to inferior user experience in which the scrolling appeared "to be a more discontinuous, choppier movement"—particularly

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

on non-uniform grids. *Id.* at 3:19-23. This can make scrolling "appear to a user as a sudden, discontinuous process." *Id.* at 3:47-48.

109.    The '927 patent overcomes these technical challenges of handling non-uniform grids and the constraints of limited screen space by expanding a cell in a first direction without expanding the cell in another direction when scrolling, thus improving the user's experience with the user interface by enabling the device to process grid scrolling and cell resizing more efficiently and smoothly, avoiding the discrete, choppy movements characteristic of conventional systems. *See id.* at cls. 1, 10, 16; 3:36-50; 5:56–59; Figs. 2–10.

110.    These technical improvements are embodied in the claims of the '927 patent. For example, claim 16 recites "during scrolling, horizontally increasing a size of the cell to a second, larger size," and "animating a revealing of a truncated portion of the content item as the size of the cell increases from the first, smaller size to the second, larger size." *Id.* at 7:18-8:4. This claim language reflects a particular manner of updating cell geometry and cell contents that specifies how the device's rendering pipeline processes scrolling to improve the user interface and performance. And the ordered combination of the elements of claim 16 was not well-understood, routine, or conventional.

111.    Further, when the non-uniform grid contains more content than can fit on the screen at once, the user can "scroll" this non-uniform grid through a variety of input devices. *Id.* at 3:4–23.

112.    The invention of the '927 patent can also be performed on a touch-sensitive display device. For example, claim 16 recites "a method of presenting a scrollable non-uniform grid of content in the form of a media programming guide on a touch-sensitive display device and updating content of a cell of the non-uniform grid during scrolling of the grid, the method comprising:" and includes the steps "during scrolling, horizontally increasing a size of the cell to a second, larger size" and "during

26

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

horizontally increasing the size of the cell, animating a revealing of a truncated portion of the content item as the size of the cell increases from the first, smaller size to the second, larger size." *Id.* at 7:1–8:4. These limitations are further geared towards solving the device-specific technological problems of non-uniform grid rendering, particularly for small screens that utilize touch input.

113. In sum, the claims recite specific, technical solutions to identified problems in the prior art. The '927 patent thus enables navigating non-uniform grids of content via an improved user interface on devices with display constraints, which improves the functioning of the devices themselves. The ordered combination of claim 16's limitations was not well-understood, routine, or conventional in the display rendering art as of the priority date. The detailed embodiments and figures in the specification demonstrate that the inventors possessed the claimed subject matter, and the specification enables a person of ordinary skill in the art to implement the invention without undue experimentation.

114. DIRECTV, LLC infringes one or more claims of the '927 patent by making, using, selling and/or offering to sell the DIRECTV Service in this District and elsewhere in the United States, and/or importing the DIRECTV Service into this District and elsewhere in the United States.

115. Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality. Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the services.

116. Claim 16 of the '927 patent recites: "A method of presenting a scrollable non-uniform grid of content in the form of a media programming guide on a touch-sensitive display device and updating content of a cell of the non-uniform grid during

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

scrolling of the grid, the method comprising." To the extent the preamble is limiting, the DIRECTV Service performs this element.

117. The DIRECTV Service presents a scrollable non-uniform grid of content in the form of a media programming guide on a touch-sensitive display device and updates content of a cell of the non-uniform grid during scrolling of the grid.

118. For example, the DIRECTV Service, through the DIRECTV App operating on a touch-sensitive display device (e.g., an iPhone®), allows a user to scroll a program guide made up of cells forming a non-uniform grid that shows several television shows and/or movies.

119. Claim 16 of the '927 patent further recites: "displaying on the touch-sensitive display device the cell of the non-uniform grid at a first, smaller size." The DIRECTV Service performs this element.

120. The DIRECTV Service displays on the touch-sensitive display device the cell of the non-uniform grid at a first, smaller size.

121. For example, as shown in the screenshot below, the DIRECTV Service, via the DIRECTV App, causes an iPhone to display a cell in a guide for a TV show or movie that extends beyond the boundaries of the grid, e.g., by some portion of the runtime of a TV show or movie having elapsed or that extends for a long enough time in the future to extend beyond the current time slots shown in the grid.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT



*Screenshot of the Guide in the DIRECTV app on an iPhone 15 Plus (4/30/2026)*

122.  Claim 16 of the '927 patent further recites: "displaying in the cell a content item that is truncated based upon the first, smaller size of the cell." The DIRECTV Service performs this element.

123.  The DIRECTV Service displays in the cell a content item that is truncated based upon the first, smaller size of the cell.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

124.   For example, as shown in the screenshot below, the DIRECTV Service, via the DIRECTV App, causes an iPhone to display a truncated portion of the movie title "Ferris Bueller's Day Off" that fits within the first, smaller size of the cell.



*Screenshot of the Guide in the DIRECTV app on an iPhone 15 Plus (4/30/2026)*

125.   Claim 16 of the '927 patent further recites: "receiving a request to scroll the non-uniform grid via a user's finger interacting with the touch-sensitive display device." The DIRECTV Service performs this element.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

126.   The DIRECTV Service receives a request to scroll the non-uniform grid via a user's finger interaction with the touch-sensitive display device.

127.   For example, a DIRECTV customer may navigate left and right in the Guide of the DIRECTV App by pressing their finger against the display of the iPhone and dragging their finger across the screen from left to right or right to left.

128.   Claim 16 of the '927 patent further recites: "horizontally scrolling the non-uniform grid on the touch-sensitive display device, the non-uniform grid scrolling in response to a location of the user's finger on the touch-sensitive display device." The DIRECTV Service performs this element.

129.   The DIRECTV Service horizontally scrolls the non-uniform grid on the touch-sensitive display device in response to a location of the user's finger on the touch-sensitive display device.

130.   For example, as shown below in the two screenshots, the DIRECTV Service, via the DIRECTV App, scrolls through the Guide in response to changing the location of the user's finger on the iPhone display. In response to a DIRECTV customer's finger moving from right to left on the screen, the left screenshot shows the Guide before scrolling and the right screenshot shows the Guide after scrolling.

31



*Two screenshots of the Guide in the DIRECTV App before and after scrolling. Taken on an iPhone 15 Plus (4/30/2026)*

131. Claim 16 of the '927 patent further recites: "during scrolling, horizontally increasing a size of the cell to a second, larger size." The DIRECTV Service performs this element.

132. The DIRECTV Service, during scrolling, horizontally increases a size of the cell to a second, larger size.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

133.    For example, as shown below, the DIRECTV Service, via the DIRECTV App, increases the size of the cell containing the title "Ferris Bueller's Day Off," i.e., it is no longer truncated after horizontal scrolling by the DIRECTV customer.



*Two screenshots of the Guide in the DIRECTV App before and after scrolling. Taken on an iPhone 15 Plus (4/30/2026)*

134.    Claim 16 of the '927 patent further recites: "during horizontally increasing the size of the cell, animating a revealing of a truncated portion of the

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA TECHNOLOGIES INC.'S COMPLAINT

content item as the size of the cell increases from the first, smaller size to the second, larger size." The DIRECTV Service performs this element.

135.  The DIRECTV Service animates a revealing of a truncated portion of the content item as the size of the cell increases from the first, smaller size to the second, larger size while horizontally increasing the size of the cell.

136.  For example, as shown below, the DIRECTV Service, via the DIRECTV App, reveals more of the title "Ferris Bueller's Day Off" after horizontal scrolling by the DIRECTV customer.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT



*Two screenshots of the Guide in the DIRECTV App before and after scrolling. Taken on an iPhone 15 Plus (4/30/2026)*

137. As described above, Defendant makes, uses, sells, and offers to sell the DIRECTV Service.

138. Defendant also tests the DIRECTV Service for development purposes and to ensure quality of service.

139. In addition, Defendant has indirectly infringed the '927 patent under 35 U.S.C. § 271(b).

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

140. Defendant has induced infringement by its respective subsidiaries and end-user customers.

141. Defendant's advertising, sales, design, development, and/or technical materials related to operation of the DIRECTV Service contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause its subsidiaries and customers to directly infringe at least one claim of the '927 patent, either literally or under the doctrine of equivalents.

142. Additionally, Defendant has induced infringement by the DIRECTV Service's end-user customers, for example, by implementing the infringing features in its DIRECTV Service, encouraging its users to use that functionality within the United States, requiring its users to use the DIRECTV app or website in order to obtain the DIRECTV Service, and/or instructing, dictating, or training its customers to use the infringing features.

143. In addition, Defendant sells, offers to sell, advertises, invites, entices, leads on, influences, encourages, prevails on, moves by persuasion, and/or causes customers to subscribe to the DIRECTV Service.

144. For example, Defendant instructs users on what the DIRECTV App is, what it does, and how to access and start using it. *See* https://www.directv.com/insider/directv-app/; https://www.directv.com/technology/app/; https://www.directv.com/support/article/000084350; https://www.directv.com/support/article/000093607. Defendant promotes the use of the DIRECTV Service's internet streaming functionality and promotes the "[f]ast & easy self-install." https://www.directv.com/how-to-watch/. Defendant further provides instructions on how to navigate its electronic programming guide (https://www.directv.com/support/article/000093529;

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

https://www.directv.com/support/article/000093209) and provides community forums for learning how to use the electronic programming guide (https://forums.directv.com/conversations/watching-streaming/directv-stream-guide/65d1f76efb78e01091eee2a3; https://forums.directv.com/conversations/watching-streaming/scrolling-through-guide/65a0ac1cd3849c4d238106ab). Through these instructions, end users can put the infringing methodology into practice by using the DIRECTV Service's electronic programming guide, the ordinary and intended use of which infringes at least claim 16 of the '927 patent.

145.    Defendant took the above actions intending to cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patent and the DIRECTV Service's infringement thereof.

146.    Accordingly, Defendant has indirectly infringed the '927 patent under 35 U.S.C. § 271(b) with respect to the DIRECTV Service.

147.    Despite its awareness of infringement of the '927 patent, Defendant continues to infringe.

148.    Defendant's infringement of the '927 patent is willful.

149.    Defendant's acts of infringement have caused damage to the Adeia Plaintiffs. The Adeia Plaintiffs are entitled to recover from Defendant the damages sustained by the Adeia Plaintiffs as a result of its wrongful acts in an amount subject to proof at trial.

**COUNT 3: INFRINGEMENT OF U.S. PATENT NO. 8,023,884**

150.    The Adeia Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein.

151.    The '884 patent, entitled "System and method for radio frequency audio recorder," issued on September 20, 2011, and names as inventors Jamie Christopher

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

Howarter, Douglas Bruce Ceballos, and Richard G. Bradford. The '884 patent is attached as Exhibit C.

152.   Adeia Media Holdings Inc. owns all rights, title, and interest in the '884 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

153.   The '884 patent is valid and enforceable and directed to patentable subject matter.

154.   The notice provisions of 35 U.S.C. § 287 do not apply in this case for the '884 patent, and therefore Adeia has satisfied its obligations under 35 U.S.C. § 287 with respect to the '884 patent.

155.   The '884 patent is directed to novel and unconventional systems and methods for the efficient access and retrieval of streaming content from a network source.

156.   In traditional broadcast systems, a user who turns on a radio mid-song, or switches channels during a program, cannot see or hear what was broadcast before the user tuned in. The user is simply "out-of-luck with conventional radio equipment." Ex. C at 1:55–62. A user could receive broadcast content in one direction, store what arrived locally, and play what was stored. But conventional equipment could not enable "a user to play more content (e.g., song or program) then when received." *Id.* at 1:65–2:1. The claims of the '884 patent overcome that structural limitation—"the principles of the present invention provide for requesting more content from a network source of the content being broadcasted, if not locally available in cache or other memory." *Id.* at 2:5–8.

157.   For example, claim 1 recites a specific, technical solution implemented as a method. The command request code is a technical mechanism used to enable retransmission of content that the user missed. The code is used to identify the selected content and specifically indicates the time and the amount of content to be

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

retransmitted. This code thus tells the service provider precisely what to locate in its archive and transmit back. Likewise, the method checks whether the selected content is already locally stored before initiating any back-channel request—routing toward a targeted network request only when local reconstruction is impossible. When local storage is insufficient, a request to the service provider carrying the command request code is made. In the case of a unidirectional broadcast (such as in a satellite system), this request is necessarily separate from the broadcast channel and directed at a specific receiver. The provider responds with a targeted retransmission identified to that receiver. The provider's return signal also includes a content code that indicates the type and amount of content being delivered, confirming that what was requested has been provided.

158. The claimed inventions provide a bidirectional, code-based exchange that is a specific technical mechanism for obtaining previously broadcast content that conventional one-way broadcast equipment was structurally incapable of performing. It is a discrete implementation of a solution to a specific technical problem, and that ordered combination of claim elements was not well-understood, routine, or conventional in the broadcast industry as of the priority date.

159. DIRECTV, LLC infringes one or more claims of the '884 patent by making, using, selling and/or offering to sell the DIRECTV Service in this District and elsewhere in the United States, and/or importing the DIRECTV Service into this District and elsewhere in the United States.

160. The Adeia Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality. The Adeia Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the services.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

161.   Claim 1 of the '884 patent recites: "A method for replaying content, said method comprising." To the extent the preamble is limiting, the DIRECTV Service performs this element.

162.   The DIRECTV Service replays content.

163.   For example, the DIRECTV Web App, e.g., running on a laptop computer, allows a user to replay a TV show or other audio-visual content.

164.   Claim 1 of the '884 patent further recites: "receiving a command from a user interface to replay selected content currently being broadcasted." The DIRECTV Service performs this element.

165.   The DIRECTV Service receives a command from a user interface to replay selected content currently being broadcasted. As shown in the screenshot below, a user receives content during a broadcast.



*Screenshot of the live broadcast of "CNN News Central" on a Chrome browser.*

166.   For example, a DIRECTV customer may select and drag the playhead indicator (as shown in the image above) or select a rewind option within the DIRECTV Web App to replay earlier content in a live broadcast.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

167. Claim 1 of the '884 patent further recites: "determining if the selected content is locally stored." The DIRECTV Service performs this element.

168. The DIRECTV Service determines if the selected content is locally stored.

169. For example, the DIRECTV Web App checks a video buffer or local cache in the customer's device to determine if content at the point selected by the customer is available locally on the device for replay.

170. Claim 1 of the '884 patent further recites: "generating a command request code to identify the selected content, wherein the command request code indicates a time and amount of selected content." The DIRECTV Service performs this element.

171. The DIRECTV Service generates a command request code to identify the selected content, wherein the command request code indicates a time and amount of selected content.

172. For example, the DIRECTV Web App generates a request for the content to be replayed. The command request code is generated by consulting those listed in the manifest. The command request codes in the manifest identify the available segments and indicate a time and amount of selected content.

173. Claim 1 of the '884 patent further recites: "communicating a request for the selected content to a service provider for the selected content to be communicated from the service provider in response to determining that the selected content is not locally stored, wherein the request for the selected content includes the command request code." The DIRECTV Service performs this element.

174. The DIRECTV Service communicates a request for the selected content to a service provider for the selected content to be communicated from the service provider in response to determining that the selected content is not locally stored, wherein the request for the selected content includes the command request code.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

175. For example, the DIRECTV Web App makes a request for an available segment from the manifest that includes the generated command request code. The request is made after determining that the content for replaying is not stored locally on the customer's device, for example, in the local cache on the device.

176. Claim 1 of the '884 patent further recites: "receiving the requested selected content." The DIRECTV Service performs this element.

177. The DIRECTV Service receives the requested selected content.

178. For example, in response to the request, the laptop computer receives the requested segment from the DIRECTV Service.

179. Claim 1 of the '884 patent further recites: "receiving a content code indicating the content type and an amount of content to be replayed; and." The DIRECTV Service performs this element.

180. The DIRECTV Service receives a content code indicating the content type and an amount of content to be replayed.

181. For example, the response and metadata that accompanies the content indicates the content type (e.g., video/mp4) and amount of content to be replayed (e.g., size and/or duration).

182. Claim 1 of the '884 patent further recites: "playing the selected content." The DIRECTV Service performs this element.

183. The DIRECTV Service plays the selected content.

184. For example, the DIRECTV Web App causes the customer's device to play the selected content. The screenshot below shows the content is replayed from the new playhead position requested by the user.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT



*Screenshot of the live broadcast of "CNN News Central" on a Chrome browser.*

185.    As described above, Defendant makes, uses, sells, and offers to sell the DIRECTV Service.

186.    Defendant also tests the DIRECTV Service for development purposes and to ensure quality of service.

187.    Accordingly, Defendant directly infringes, literally and/or under the doctrine of equivalents, the '884 patent under 35 U.S.C. § 271(a).

188.    In addition, Defendant has indirectly infringed the '884 patent under 35 U.S.C. § 271(b).

189.    Defendant has induced infringement by others, such as its respective subsidiaries and end-user customers.

190.    Defendant's advertising, sales, design, development, and/or technical materials related to operation of the DIRECTV Service contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause its subsidiaries and customers to directly infringe at least one claim of the '884 patent, either literally or under the doctrine of equivalents.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

191. Additionally, Defendant has induced infringement by the DIRECTV Service's end-user customers, for example, by implementing the infringing features in its DIRECTV Service, encouraging its users to use that functionality within the United States, requiring its users to use the DIRECTV app or website in order to obtain the DIRECTV Service, and/or instructing, dictating, or training its customers to use the infringing features.

192. In addition, Defendant sells, offers to sell, advertises, invites, entices, leads on, influences, encourages, prevails on, moves by persuasion, and/or causes customers to subscribe to the DIRECTV Service.

193. For example, Defendant instructs users on what the DIRECTV App is, what it does, and how to access and start using it. *See* https://www.directv.com/insider/directv-app/; https://www.directv.com/technology/app/; https://www.directv.com/support/article/000084350; https://www.directv.com/support/article/000093607. Defendant promotes the use of the DIRECTV Service's internet streaming functionality and promotes the "[f]ast & easy self-install." https://www.directv.com/how-to-watch/. Defendant further provides instructions on how to "[u]se DIRECTV 72 Hour Rewind to watch previously aired programming" and provides a list of "[n]etworks that offer 72 Hour Rewind." https://www.directv.com/support/article/000081220. Defendant provides similar instructions for its "72 Hour Lookback" feature to "[w]atch select shows that aired in the last 72 hours on DIRECTV via Internet/DIRECTV STREAM" and provides a list of "[n]etworks that offer 72 Hour Lookback feature for some of their programs." https://www.directv.com/support/article/000082921. Defendant also provides instructions for "how to get up to 60 minutes of live buffer when you change the channel" for both satellite and internet connections. https://www.directv.com/support/article/000093572. Through these instructions, end

44

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

users can put the infringing methodology into practice by using the DIRECTV Service's features for rewinding previously aired programming, the ordinary and intended use of which infringes at least claim 1 of the '884 patent.

194. Defendant took the above actions intending to cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patent and the DIRECTV Service's infringement thereof.

195. Accordingly, Defendant has indirectly infringed the '884 patent under 35 U.S.C. § 271(b).

196. Despite its awareness of infringement of the '884 patent, Defendant continues to infringe.

197. Defendant's infringement of the '884 patent is willful.

198. Defendant's acts of infringement have caused damage to the Adeia Plaintiffs. The Adeia Plaintiffs are entitled to recover from Defendant the damages sustained by the Adeia Plaintiffs as a result of its wrongful acts in an amount subject to proof at trial.

**COUNT 4: INFRINGEMENT OF U.S. PATENT NO. 12,593,081**

199. The Adeia Plaintiffs incorporate the allegations of all of the foregoing paragraphs as if fully restated herein.

200. The '081 patent, entitled "Systems and methods for dynamically generating manifests that enable dynamic insertion of content during adaptive streaming of video," issued on March 31, 2026, and names as inventors Michael Gordon and David Morel. The '081 patent is attached as Exhibit D.

201. Adeia Media Holdings Inc. owns all rights, title, and interest in the '081 patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

202. The '081 patent is valid and enforceable and directed to patentable subject matter.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

203.   The notice provisions of 35 U.S.C. § 287 do not apply in this case for the '081 patent, and therefore Adeia has satisfied its obligations under 35 U.S.C. § 287 with respect to the '081 patent.

204.   The claims of the '081 patent describe a specific, technical solution, embedded within the architecture of adaptive streaming video delivery itself, to a concrete problem that arises only in the networked delivery of third-party dynamic content within manifest-driven video streams.

205.   The '081 patent is directed to a specific, concrete improvement to the architecture of adaptive streaming video delivery: a CDN-integrated system in which dynamic third-party content to be inserted into a stream—such as advertisements selected during streaming for a particular user device—is downloaded and stored within servers of the CDN itself, and then served directly by the CDN to the user device in response to a CDN-hosted URL embedded in a dynamically generated manifest file. That architectural arrangement solves a problem that is native to Internet-based streaming and that has no pre-digital analog: the service interruption caused when a user device must reach out to a separate, independently operated server at the precise moment during video playback when continuity is most critical.

206.   The prior art failed to solve a structural problem inherent in delivering third-party content within adaptive streaming video. As the specification recognizes, infrastructure resources in a networked delivery environment are frequently subject to the "weakest link" dynamic: a single unavailable or poorly performing resource can degrade the entire user experience, and "video playback is interrupted" when data does not arrive at the rate at which the video player renders it. *Id.* 2:53–3:24. When the content publisher's manifest file directed the user device to request third-party content—such as an advertisement—from a remote server operated independently of the CDN distributing the video, that remote server became precisely such a weakest link. The user device's request for the advertisement therefore depended in real time

46

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

on a system the CDN could neither guarantee nor measure, at the precise moment—the advertisement break—when continuity of playback was most critical.

207.   Claim 1 solves this problem through a specific, ordered sequence of CDN-layer operations that changes the overall architecture of dynamic content insertion distinct from either prior approach. The first step—"downloading and storing, by a Content Distribution Network (CDN), content from a remote content provider server, where the CDN comprises a plurality of servers distributed across multiple locations"—establishes the foundational architectural precondition: the advertisement is not requested from a remote ad server at playback time; it is already resident within the CDN before the user device ever requests a manifest. That step, which the prior art does not disclose for dynamic user-targeted content, changes the delivery topology. The CDN is no longer a passive intermediary between the user device and a third-party ad server; it becomes an active content origin for the advertisement itself.

208.   The second step—"receiving, by a manifest file handler, a request for a manifest file for a particular adaptive streaming video from a user device"—triggers the dynamic selection process. Critically, the "selecting" step that follows must be "performed following receipt, by the manifest file handler, of the request for the manifest file from the user device." This constraint is architecturally significant: the selection is not pre-computed and embedded in a static manifest before the user device requests it; it is performed dynamically, after the request arrives, enabling the manifest file handler to tailor the selected content to the characteristics of the particular requesting device and the particular video session. The selection also draws specifically on the CDN-resident content established in step one—"the selected dynamic content is the content from the remote content provider server stored within the CDN"—which ensures that what is selected is something the CDN can serve

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

autonomously, without any further communication with the remote third-party provider.

209.    The generated manifest is a structured control document whose field-level contents reflect all of the foregoing determinations: it includes "URLs that can be utilized to obtain video segments from the particular adaptive streaming video from the CDN," "information concerning at least one break within the particular adaptive streaming video," and, critically, "a URL that can be utilized to obtain the selected dynamic content from the CDN for insertion within a specific break within the particular adaptive streaming video." Because both the video segments and the advertisement are served from CDN-hosted URLs in the manifest, the user device makes all content requests to CDN infrastructure, and the CDN can serve the advertisement "directly" in response to those requests without any real-time dependence on the availability or performance of the third-party provider. *Id.* 141:11–53 ("any potential performance issues of third-party content provider and/or network issues affecting the third-party content provider, need not affect the seamless delivery of the third-party content within the adaptive streaming video to the user device").

210.    The ordered combination is unconventional. The prior art did not disclose downloading dynamic user-targeted content into a CDN for subsequent selection at manifest-request time, generating a manifest containing a CDN-hosted URL for that content, and having the CDN serve the advertisement in response to a request containing that URL—separately from, but coordinated with, its serving of the video segments. The potential advantages—eliminating service interruptions attributable to the third-party content provider and reducing uncertainty in CDN performance analysis by removing the third party server as a confounding variable—flow directly and specifically from the resulting architecture, not from any general concept of delivering third party content during video playback.

48

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

211.   Moreover, the components recited in the claims are unconventional, non-routine, and were not well understood at the time of the invention, whether considered alone or as an ordered combination.

212.   DIRECTV, LLC infringes one or more claims of the '081 patent by making, using, selling and/or offering to sell the DIRECTV Service in this District and elsewhere in the United States, and/or importing the DIRECTV Service into this District and elsewhere in the United States.

213.   The Adeia Plaintiffs provide the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality. The Adeia Plaintiffs reserve the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the services.

214.   Claim 1 of the '081 patent recites: "A method of dynamically inserting content during adaptive streaming of video to a user device, the method comprising." To the extent the preamble is limiting, the DIRECTV Service performs this element.

215.   The DIRECTV Service dynamically inserts content during adaptive streaming of video to a user device.

216.   For example, the DIRECTV Service inserts ads while adaptively streaming video to customers. The DIRECTV Service "dynamically inserts ads in-view within premium cable and digital-first networks."[28] To that end, the DIRECTV Service "[d]eliver[s] relevant ads to deterministically matched households across linear and streaming."[29] Furthermore, the DIRECTV Service provides advertisers the ability to dynamically "cap exposure where it's saturated and redistribute impressions to light TV viewers."[30]

---

[28] DIRECTV ADVERTISING, https://www.directvadvertising.com/solutions/contextual-targeting (last accessed June 2, 2026).
[29] DIRECTV ADVERTISING, https://www.directvadvertising.com/solutions/addressable (last accessed June 2, 2026).
[30] Id.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT



https://www.linkedin.com/posts/directvadvertising_putting-the-viewer-front-and-center-of-dynamic-activity-7287522800146227201-a4tu[31]

217.   Claim 1 of the '081 patent further recites: "downloading and storing, by a Content Distribution Network (CDN), content from a remote content provider server, where the CDN comprises a plurality of servers distributed across multiple locations." The DIRECTV Service performs this element.

218.   DIRECTV Service downloads and stores, by a Content Distribution Network (CDN), content from a remote content provider server, where the CDN comprises a plurality of servers distributed across multiple locations.

219.   For example, DIRECTV Service downloads and stores an advertisement to a CDN from an ad provider. The CDN includes servers spread across different

---

[31] *See also* Surendiran Dhayala Rajan, *Putting the Viewer Front and Center of Dynamic Ad Insertion*, (Jan. 15, 2025) (last accessed May 6, 2026) https://www.mediavillage.com/article/putting-the-viewer-front-and-center-of-dynamic-ad-insertion/.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA TECHNOLOGIES INC.'S COMPLAINT

geographic locations to facilitate content delivery to DIRECTV customers. Non-limiting examples of CDNs include Akamai, Amazon CloudFront, and Fastly.

220.   Claim 1 of the '081 patent further recites: "receiving, by a manifest file handler, a request for a manifest file for a particular adaptive streaming video from a user device." The DIRECTV Service performs this element.

221.   The DIRECTV Service receives, by a manifest file handler, a request for a manifest file for a particular adaptive streaming video from a user device.

222.   For example, the DIRECTV Service receives a request for a manifest file from a DIRECTV subscriber accessing DIRECTV services through the subscriber's device, e.g., TV, computer, mobile device. The manifest file indicates the adaptive streaming content a DIRECTV customer wants to view, e.g., a TV show, movie, live broadcast.

223.   Claim 1 of the '081 patent further recites: "selecting, by the manifest file handler, dynamic content for insertion within the particular adaptive streaming video, where: the selection is performed following receipt, by the manifest file handler, of the request for the manifest file from the user device; and the selected dynamic content is the content from the remote content provider server stored within the CDN." The DIRECTV Service performs this element.

224.   The DIRECTV Service selects, by the manifest file handler, dynamic content for insertion within the particular adaptive streaming video, where: the selection is performed following receipt, by the manifest file handler, of the request for the manifest file from the user device; and the selected dynamic content is the content from the remote content provider server stored within the CDN.

225.   For example, the DIRECTV Service selects advertisements that should play while the user is watching the adaptive streaming video. The DIRECTV Service selects an advertisement to include after it receives the user's request for a manifest file. The advertisement is stored in the CDN.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

226. Claim 1 of the '081 patent further recites: "dynamically generating, by the manifest file handler, a manifest file for the particular adaptive streaming video based upon the selected dynamic content, where the manifest file comprises: URLs that can be utilized to obtain video segments from the particular adaptive streaming video from the CDN; and information concerning at least one break within the particular adaptive streaming video; and a URL that can be utilized to obtain the selected dynamic content from the CDN for insertion within a specific break within the particular adaptive streaming video." The DIRECTV Service performs this element.

227. The DIRECTV Service dynamically generates, by the manifest file handler, a manifest file for the particular adaptive streaming video based upon the selected dynamic content, where the manifest file comprises: URLs that can be utilized to obtain video segments from the particular adaptive streaming video from the CDN; and information concerning at least one break within the particular adaptive streaming video; and a URL that can be utilized to obtain the selected dynamic content from the CDN for insertion within a specific break within the particular adaptive streaming video.

228. For example, the DIRECTV Service generates a manifest file that includes an ad break indicating where the advertisement should play within the adaptive streaming video. The manifest file includes URLs for segments of the adaptive streaming video and a URL for one or more segments for the advertisement stored in the CDN.

229. Claim 1 of the '081 patent further recites: "transmitting, by the manifest file handler, the dynamically generated manifest file to the user device." The DIRECTV Service performs this element.

230. The DIRECTV Service transmits, by the manifest file handler, the dynamically generated manifest file to the user device.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

231.   For example, the DIRECTV Service transmits the generated manifest file to the user device.

232.   Claim 1 of the '081 patent further recites: "receiving, by at least one of the servers within the CDN, requests for video segments from the particular adaptive streaming video from the user device, where the requests contain the URLs that can be utilized to obtain video segments of the particular adaptive streaming video from the CDN." The DIRECTV Service performs this element.

233.   The DIRECTV Service receives, by at least one of the servers within the CDN, requests for video segments from the particular adaptive streaming video from the user device, where the requests contain the URLs that can be utilized to obtain video segments of the particular adaptive streaming video from the CDN.

234.   For example, a DIRECTV customer's device requests a segment of the adaptive streaming video using the associated URLs in the manifest file received from the DIRECTV Service. The request is made to server(s) in the CDN indicated by the URLs.

235.   Claim 1 of the '081 patent further recites: "serving, by at least one of the servers within the CDN, video segments from the particular adaptive streaming video to the user device." The DIRECTV Service performs this element.

236.   The DIRECTV Service serves, by at least one of the servers within the CDN, video segments from the particular adaptive streaming video to the user device.

237.   For example, the DIRECTV Service, using the CDN, transmits segments of the adaptive streaming video to the user device.

238.   Claim 1 of the '081 patent further recites: "receiving, by at least one of the servers within the CDN, a request for the selected dynamic content from the user device, where the request includes the URL that can be utilized to obtain the selected dynamic content from the CDN; and." The DIRECTV Service performs this element.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

239. The DIRECTV Service receives, by at least one of the servers within the CDN, a request for the selected dynamic content from the user device, where the request includes the URL that can be utilized to obtain the selected dynamic content from the CDN.

240. For example, the DIRECTV customer's device requests a segment of the advertisement using at least one associated URL in the manifest file received from the CDN controlled by the DIRECTV Service. The request is made to the server in the CDN indicated by the URL.

241. Claim 1 of the '081 patent further recites: "serving, by at least one of the servers within the CDN, the selected dynamic content to the user device." The DIRECTV Service performs this element.

242. The DIRECTV Service serves, by at least one of the servers within the CDN, the selected dynamic content to the user device.

243. For example, the CDN controlled by the DIRECTV Service transmits segment(s) of the advertisement to the customer's device.

244. As described above, Defendant makes, uses, sells, and offers to sell the DIRECTV Service.

245. As described above, Defendant also tests the DIRECTV Service for development purposes and to ensure quality of service.

246. In addition or in the alternative, Defendant directs or controls its third-party cloud service and CDN providers' performance of those steps and/or has the power, right, and ability to stop the performance of those steps but declines to do so, and instead profits from their performance. For example, DIRECTV has contracts with its third-party cloud service and CDN providers. Thus, the performance of the claimed steps is attributable to Defendant.

247. Accordingly, Defendant directly infringes, literally and/or under the doctrine of equivalents, the '081 patent under 35 U.S.C. § 271(a).

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

248. In addition, Defendant has indirectly infringed the '081 patent under 35 U.S.C. § 271(b).

249. Defendant has induced infringement by others, such as its respective subsidiaries and end-user customers.

250. Defendant's advertising, sales, design, development, and/or technical materials related to operation of the DIRECTV Service contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause its subsidiaries and customers to directly infringe at least one claim of the '081 patent, either literally or under the doctrine of equivalents.

251. Additionally, Defendant has induced infringement by the DIRECTV Service end-user customers, for example, by implementing the infringing features in its DIRECTV Service, encouraging its users to use that functionality within the United States, requiring its users to use the DIRECTV app or website in order to obtain the DIRECTV Service, and/or instructing, dictating, or training its customers to use the infringing features.

252. In addition, Defendant sells, offers to sell, advertises, invites, entices, leads on, influences, encourages, prevails on, moves by persuasion, and/or causes customers to subscribe to the DIRECTV Service.

253. For example, Defendant instructs users on what the DIRECTV App is, what it does, and how to access and start using it. *See* https://www.directv.com/insider/directv-app/; https://www.directv.com/technology/app/; https://www.directv.com/support/article/000084350; https://www.directv.com/support/article/000093607. Defendant promotes the use of the DIRECTV Service's internet streaming functionality and promotes the "[f]ast & easy self-install." https://www.directv.com/how-to-watch/. Through these

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

instructions, end users can put the infringing methodology into practice by using the DIRECTV Service to make requests for video segments, which are received by the DIRECTV Service.

254. Defendant also actively promotes the benefits of the advertising features of the DIRECTV Service, noting Defendant is "now bringing its TV Video expertise beyond the traditional household to serve premium ad experiences to audiences on the go." https://www.directv.com/insider/news/advertising-directv-remote/. Defendant has further stated that "[a]ddressable TV advertising is defined as the use of targeted ads dynamically distributed to the household or user, based on identifiers matched against first, second- or third-party data. This then allows marketers to find smaller cohorts of consumers on the big screen, regardless if it is linear or Connected TV, and serve advertising tailored to them." https://www.directv.com/insider/news/dish-media-and-directv-advertising-collaborate-to-simplify-addressable-tv-for-programmers/.

255. Defendant took the above actions intending to cause infringing acts by others, and/or it willfully blinded itself as to the existence of the Asserted Patent and the DIRECTV Service's infringement thereof.

256. Accordingly, Defendant has indirectly infringed the '081 patent under 35 U.S.C. § 271(b).

257. Despite its awareness of infringement of the '081 patent, Defendant continues to infringe.

258. Defendant's infringement of the '081 patent is willful.

259. Defendant's acts of infringement have caused damage to the Adeia Plaintiffs. The Adeia Plaintiffs are entitled to recover from Defendant the damages sustained by the Adeia Plaintiffs as a result of its wrongful acts in an amount subject to proof at trial.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Adeia Media Holdings Inc. and Adeia Technologies Inc. ask this Court for an order granting the following relief:

A. A judgment in favor of Plaintiffs that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '013, '927,'884, and '081 patents;

B. A judgment and order finding that Defendant's infringement has been willful;

C. A permanent injunction prohibiting Defendant from further acts of infringement;

D. A judgment and order requiring Defendant to pay Plaintiffs their damages, costs, expenses, and any enhanced damages to which Plaintiffs are entitled for Defendant's infringement;

E. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

F. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiffs their reasonable attorneys' fees against Defendant; and

G. Any and all other relief as the Court may deem appropriate and just under the circumstances.

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT

Dated: July 2, 2026

Respectfully submitted,

/s/ M. Elizabeth Day
M. Elizabeth Day (SBN 177125)
eday@bdiplaw.com
Marc Belloli (SBN 244290)
mbelloli@bdiplaw.com
Aaron Hand (SBN 245755)
ahand@bdiplaw.com
Robin Curtis (SBN 271702)
rcurtis@bdiplaw.com
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248

Of Counsel:

Bradley W. Caldwell
bcaldwell@caldwellcc.com
Jason D. Cassady
jcassady@caldwellcc.com
John Austin Curry
acurry@caldwellcc.com
Brian D. Johnston
bjohnston@caldwellcc.com
**CALDWELL CASSADY & CURRY PC**
2121 N Pearl St., Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848

*Attorneys for Plaintiffs Adeia Technologies Inc., Adeia Guides Inc., and Adeia Media Holdings Inc.*

58

PLAINTIFFS ADEIA MEDIA HOLDINGS INC. & ADEIA
TECHNOLOGIES INC.'S COMPLAINT